www.FordMotor.com www.FordMotor.com www.FordMotor.com www.FordMotor.com www.FordMotor.com       www.FordMotor.com www.FordMotor.com www.FordMotor.com Mr. Heavy May it please the Court. My name is James Hybee and I represent Hybee. Okay. I represent Ford Motor Company, the appellant in this matter. And I'd like to reserve four minutes for rebuttal, if I may. The issue presented That request will be granted. Thank you, Your Honor. The issue presented in this case is whether the District Court abused its discretion in certifying a class of approximately 4,500 then current and former Ford dealers who had their franchises during the time that this global program was in existence, between 2000 and it ended at the end of March of 2005. Whether it abuses discretion where, one, antagonism, conflicts, and the individual inquiries necessary to establish his preclude class treatment, where, two, the Court essentially ignored the analysis under Rule 23, the rigorous analysis of distinct considerations and rather concluded that he required nothing more than what he erroneously concluded was a common course of conduct. Is this all or nothing? Could we find that the District Court erred in granting certifying the class for certain counts but that other counts perhaps were appropriate for a class action? I would suggest to you as I go through this, I'm going to address the various counts. I would suggest to you that it's an all or nothing. Well, I mean, you are saying none of them should be certified. But what if we find maybe one of the counts could have been certified? Can we break that one off? I think what we're talking about then is changing the complexity of the case, changing the complaint, and ending up with I don't know how many different trials and how many cases either before him or before other District Judges or State Court Judges. You're not saying that we can't do it. You're saying it's going to create havoc before the District Court. Has that ever been done? Do you know? Not to my knowledge. I had my clerk looking into it and we didn't. It's certainly an issue that I've been thinking about but we haven't seen anything that would support that. The third part is where the Court acted arbitrarily and inconsistently. By failing to allow class discovery, at the point at which he was ruling there was actually no discovery, let alone class discovery, he failed to consider evidence outside the complaint save for an expert report that plaintiffs put in a reply brief in some other case. And he failed to conduct any kind of a hearing at all. We never had an opportunity to get up and argue like this. And he failed to consider Ford's numerous requests that he ruled on whether they had a case to begin with, whether they had a viable complaint, cause of action, particularly under the prior to ruling on class certification. Now, I think to put it in proper context, I'd like to spend just a second describing who these plaintiffs are based on their own allegations. They're dealers who compete in different geographic markets and different competitive situations across the country. Some of these dealers were certified under Blue Oval. Some were not certified. Some were certified at certain points during the course of the program. Some never even tried for certification. Some automatically certified, meaning that they did nothing other than be told you're certified and you're going to get the benefits of the program. Some self-certified, meaning they literally pushed a button and did very little. Some had to go through the whole process for the on-site inspections by J.D. Power. How does that make a difference from other potential members of a class? There could be a lot of diverse members of classes on various class actions. Some who may be complaining about the product. Some who aren't complaining about the product. But whether you complained or you didn't complain, you ended up being part of a class unless you opted out. Opting out should not be a substitute for... I'm not saying that, but I'm saying that your argument about diversity in a class seems to me to be the norm as opposed to the norm. Your Honor, if you layer this diversity over the various claims in the case and go through the various requirements of Rule 23, there can't be any conclusion but that you can't have, for example, favored or disfavored plaintiffs within the same class. Their interests are adverse. Under the Robinson-Patman Act, for example, the allegation is that the certified dealers stole sales from the non-certified dealers. That kind of adversity doesn't satisfy either the adequacy requirement or the predominance requirement under 23. In Rule 23, the case law is clear. You have to go through this and do a rigorous analysis. And what the district court did was he concluded on one little aspect of typicality, i.e., common course, that that satisfied Rule 23. If you go through his opinion and order, what you see is that he considered, supposedly, in his order, each of the four elements. But on each one, he kept coming back to common course of conduct. Under the typicality requirement, that's part of it. But the other part of it under typicality, other than just common course of conduct, is the same legal theory. You can't proceed. A plaintiff who is favored can't proceed on the same legal theory as one who is disfavored. Can you create them into separate classes? First of all, I would suggest to you that that was never requested. That was never a consideration. Again, we never got a chance to even talk to the judge about it. But I would suggest to you, no. I would suggest to you that even in those individual classes, and there would be thousands of individual classes, because the questions that have to be asked of each and every dealer tell a different story. There are 4,500 potential class members here. There are 4,500 different stories to be told. And you don't have to sit there and guess as to whether I'm correct or not. Look at the complaint and see the nine plaintiffs who tell a different story. Some of them never even tried to be certified. Some of them were never in the program. Some were. Some automatically certified. All these different stories. Your Honors, under Rule 23, with respect to the predominance, it's those individual inquiries that suggest that the issues and facts are not of the highest, don't predominate over those of the individuals. And again, it's their allegations. I'm not making this up. With respect to two of them, Augusta and Condon, they're unique defenses. Again, that makes them not typical. Well, wouldn't you, wouldn't they like to try? I mean, what questions, and maybe you're not the person to ask this, but when is it contemplated will be tried? I know there's sometimes follow-up trials, but the initial trial, there's got to be something in common being tried. Was that made clear what that might be? No, Your Honor, it wasn't. What you see is what's in the pleadings and what's in the amended complaint. And what they would have you believe and what the district judge did was say, well, it's common. They all don't like Ford and they all don't like this program. That's not enough. If I were there and it's the first day of the trial, I'd say to the plaintiff, well, what are you going to prove here? This is your case. You've got it. What are you trying to prove at this trial? And was that made clear? Do we know what they're trying to prove? I think what they're trying to prove is that there's an antitrust violation here under the Robinson-Patton Act. I would want it a little more specific as to what they were trying to prove. And the specifics would be the inquiries that I suggest to you are going to have to be made on an individual basis. And that is, where's your market? With whom are you competing? Are you competing with another certified dealer? Are you competing with a non-certified dealer? Are you losing sales? There's more to this than just we don't like the program. Under the Attica claim, the Automobile Dealer Day in Court Act, coercion, threats, they have to prove that if they existed, if at all. And if you look at their complaint, they all don't say it. They say some of them were, some of them weren't. Some of them were coerced supposedly by an underallocation of vehicles. Some of them complained that other dealers were helped to be certified under the others who weren't helped. These are all different stories. All different inquiries where under the predominance prong, they can't satisfy it. Under the adequacy prong, there is, it's to test whether, you don't have a common adversary. That's not the test. It's whether there are any conflicts, whether there's any antagonism. And here, there is. There are favored. There are disfavored. Yeah, but aren't these arguments that you're making go, shouldn't they go more to the merits as opposed to the certification? No, sir. I do not believe so. And I'm not trying to argue the merits. I wanted to argue the merits. I know you would like to. You'd like to. But it just seems to me that what they've done in saying we are all part of this, we all want to be part of this class action for which they've now been certified, they've lowered the bar a bit. They've lowered the bar a bit beyond where it could be if they all were complaining that they lost business. But since some of them picked up business and others lost business, they've narrowed their claim somewhat. But they're basically saying there's a Robinson Patent Act violation here and there are various other violations under federal and state law that were inflicted on all of us as dealers. But by necessity, the commonality of their claim is going to be much less than it would be if they could all stand there and say we lost business by Ford doing this to us. The point is, though, Your Honor, that if you look at their complaint and you look at their allegations and that's what they went on and that's all the judge considered other than this expert report that had nothing to do with anything, they're telling different stories, each and every one of them. And you're looking at it with all due respect from about 30,000 feet. And what you're seeing is, oh, yeah, they all complain about the program and they all say they were harmed. Isn't there going to come a time after class certification that those different stories are going to get cut off? A court's going to have to say that's not before this court. Why should Ford, in fairness, have to be put through all that type of discovery when up front you can look at what they allege and you can look at that amended complaint and you can say no predominance, there's antagonism, so there can't be any adequacy, there's no typicality because they've got different legal theories. That's your argument. That is my argument, Your Honor. And you've made that well and you'll have four minutes on rebuttal to further make. Thank you. Mr. Chase, you have nine minutes and then Mr. Goodman with six. Yes, thank you. And if the Court please, the way we divided our labor was Mr. Goodman's going to talk about Robinson-Patman and I have everything else. We thought it would be useful for me to go first. Mr. Chase, I just wanted to ask you, you're with the Bresta firm, right? Yes, sir. And is Mr. Goodman with the Greenbaum firm? Yes. Okay. See, it's not clear from the brief and I couldn't tell. I apologize for that. That's all right. It's not a big deal. Let me ask you what I asked the appellants. If we find that it is appropriate to certify a class action in some clauses of action but not in others, is it all or one? Can we break off certain? Even though neither party briefed that, we've done a lot of thinking about that question because in kind of playing the tea leaves, we believe that the Robinson-Patman part of this is the most controversial. And in answering Your Honor's question, we think you have the inherent power to do that because you could apply the standard of abuse of discretion to any aspect of what the judge did below. I can't see how that's very arguable from our point of view, even though it might be against our side's interest. I think you clearly have the power to do that. Is there any precedent one way or another? We couldn't find any, Your Honor. The court knows not many cases go up on this kind of discretionary issue under Rule 23. But it would seem to me that in fairness and justice, maybe looking back to Rule 1 of the federal rules, to do justice in a case, if the court found that there was an abuse of discretion regarding one cause of action but not the others, it wouldn't be just to treat them all the same way. So I think you have the inherent power, even if we were unable and Your Honor was unable to find any precedent on that point. This is a case, Your Honor. So you're not going all in as a sandpicker? Your Honor, I can't imagine that this rule was enacted so that it had to be all or nothing when you've got multiple issues before you. This case presents to Your Honors a situation created by Ford alone. There's a vast amount of material that was all given to the dealers across the country. It's a unified Blue Oval plan that was given to everybody. I would ordinarily have talked about future discovery, but I know that there was a... Well, I want to ask you this question. I've thought about this a lot. Assume there's no pretrial order and you're now here for the first day of the trial, and I guess there's a jury trial demand, and the judge says, okay, what are you going to prove at this trial? And take the whole case, including Mr. Goodman's part. What are you going to say, this is as to all the class, and here's the trial, there may be more trials, what are you going to prove? I was hoping Your Honor would ask me the same question. Thank you. I would start by quoting Judge Alito in this case. He wrote, plaintiffs say BOP caused them, one, to spend money against their will to comply with certification requirements, two, to relinquish control over certain aspects of dealership operations, three, to forfeit interest payments which otherwise would be earned on money spent covering the BOP's mandatory 1% fee, and four, to face the constant threat of losing certification if Ford chooses to ratchet up the BOP standards of the future. That's at 432F286 in this case when it came up on a different issue. Reach of contract questions, Dealer's Day and Court Act questions, we have an affidavit from a dealer that was in the case from the beginning. Would that be true as to the whole class though? Yes. Because some may not have lost sales. Your Honor, part of our complaint quotes the president of the Ford division that says anybody who doesn't make it, maybe we don't want them as a dealer. Well, that may be, but part of what you just said was that some people lost sales. Maybe some in the class didn't. Well, Your Honor, it's a threat to everybody. It's an illegal threat under the Dealer's Day and Court Act, and it's to everybody. It's a kind of. But if you suffered no harm, you have no standing to come into court. Now, Judge Alito said from the complaint we cannot tell. Yes. But by the time this case is ready to go to court after discovery, there may be showing that some of the dealers didn't lose sales. Now, should they be in this case? Yes. One element of relief for them and for everybody is Ford doesn't have the power and authority under their contract to do this to all the dealers. All the dealers, if they wanted to certify, had to jump through certain hoops in this unified plan. But what if the plan helped them? Are you injured because you were told to do something you don't want to do and it helps you? Well, to that hypothetical, Your Honor, I would say the dealers still have a right to be bound by the contract that they have and not be forced into anything, even if it turned out in the aftermath that it helped them. By the way, I think it's contradictory of the facts that we have learned. I don't think there's any dealer in America who's better off because of Blue Oval today. And I say that advisedly based on some after-the-fact knowledge. I think Ford's going to be hard-pressed to show that if that becomes an issue. It was a breach of contract for all of them. Ford imposed this on the dealers. It was in a very threatening way with the president of Ford publicly saying that if you can't do this, you shouldn't be a dealer. And we have other evidence that is in the pleading about threats of termination and other evidence has followed as well. This is an extraordinary unified action. Judge Kavanaugh did exactly the right thing as early in the case as he could, even though it was already years old and the rule requires it to be done early. We say, Your Honors, let Judge Kavanaugh govern this case at the trial level. He can revisit these issues at the trial level at a later time. He would be the one overseeing discovery. He would be the one, in answer to a question to my adversary, he would be the one to determine whether there would be subclasses. At a later date, they can revisit the question. After all, the discovery is done and the discovery is ongoing. That's the time. If you want subclasses, at what point in the litigation do you have to make that demand? I think probably after all discovery is done we would be able to do that. There is much precedent for devising and revising classes in a litigation like this. What kind of a verdict do you get if you win, like a declaratory judgment? Because there couldn't be damages at that point. Oh, I think there will be damages. On the initial trial? Well, it could be, Your Honor. We will have an expert. That was the point of the expert. It was a demonstrative report from another case. It wasn't a report on this case. But there's thousands of people. I mean, they have evidence. Look, this dealer in Lakewood, New Jersey, had this, and this dealer in Sacramento, California, had that. We believe that it can be done in a formulaic way and without giving a lot of discussions with a would-be expert. It was done in the big Honda case where every innocent Honda dealer in America wound up settling with Honda. The present plaintiffs, have they all suffered injury? Have they all lost sales? They've all suffered injury. Have they all lost sales? I don't know. Under Rule 11, don't you need to know that before you bring this suit? Well, Your Honor, we know that what they were doing, it was a looking-forward complaint. We believe that they did suffer sales. Well, there's a class period that is involved in creating this class. Would there not have to be a loss of sales during that class period if you are alleging loss of sales? Well, there would surely have to be damage. But what we believed and what I think we will prove, because we're talking prospectively at that time, prospectively we predicted losses of sales, and indeed that has happened. I mean, the record of Ford as a company since then. But the record of your clients. Oh, yes. To the best of my knowledge, and these clients have, a lot of them have been deposed, and, of course, there's a much larger class out there. A couple of them are out of business now, as we've indicated to the Court. A couple of the named representative plaintiffs have gone out of business. This has been a horrendous, ill-advised program that happens to be illegal on the number of grounds that we have advised the Court in our briefing. All right. We'll hear from Mr. Goodman. Thank you. Thank you. Mr. Goodman, at least as to the briefs and the argument, it seems like there is the most question about the commonality and the typicality about the Robinson-Patton Act claims. I know that's what you're here to address, but why don't you get right to that. Absolutely, Your Honor. Certainly, there's no question that the Robinson-Patton Act is the most controversial area. That's because there are a number of cases that have denied class certification of Robinson-Patton. But there's no per se rule that says that Robinson-Patton cannot be appropriate for class action. And I think here Judge Kavanaugh properly analyzed each of the elements under Rule 23 to determine this is the appropriate case for it. One of the reasons why Robinson-Patton Act claims have typically not been accorded class action certification is because there are different prices, different formulas, et cetera, with regard to the pricing between different purchasers, the favored and the non-favored purchasers. We don't have that situation here. What we have is a uniform pricing system. One percent had to be paid by all the dealers. It's common to all the dealers. They were all subjected to a three-tier rebate system. They either got one and a half percent back, one percent back, or zero percent back. This is not the situation as typically the case in Robinson-Patton Act claims where you have to have separate trials with regard to each individual sale because you have a uniform system, a uniform program that uniformly affected the different dealers. Are there individual facts with regard to each dealer? Of course there are. Now, are you talking about loss of sales from one Ford dealer to another Ford dealer or are you talking about loss of sales from a Ford dealer to a Chevrolet dealer to a Honda dealer? We're talking about with regard to Ford dealers. Now, let me address that directly, Your Honor, because what we have here is an inference, as Judge Kavanaugh promptly found, of competitive injury, and that aspect goes to competitive injury, loss of sales to a competitor. Okay, so you're saying you lost sales to other Ford agencies, but you're saying we want all the agencies to be plaintiffs. So how can you have some plaintiffs who have gained from the scheme and some plaintiffs who have lost from the scheme? There are actually two responses I have there. First of all, we don't have to prove the loss of sales. You can do it based upon loss of profits, market analysis, et cetera. You don't have to show individual loss of sales to another dealer. We don't really have that antagonism that Ford has tried to argue we have because once you have the presumption, the inference of competitive injury, because of a price reduction over a substantial course of time, we're entitled to that inference, and Ford certainly on the merits can try to attack that inference, but we're entitled to that inference certainly at this point. The second issue— But you're saying some Ford dealers lost sales to other Ford dealers. That is correct. And the Ford dealers who gained sales, you want to be part of the class, and yet if they gained sales, I presume they profited from this gain in sales. It's an interesting phenomenon because we have tried, meticulously tried, to have plaintiffs that represent every possible scenario, if you will, with regard to the Ford dealers who were affected by this program. All of them were affected. So we included certified dealers. We included non-certified dealers. We included those that struggled to certify, some that were certified at times and weren't. We made sure that we had plaintiffs to cover the whole class. We certainly at some point might move to have subclasses as necessary. We're not at that point yet. So we don't have the antagonism that really Ford is trying to create here between favored and disfavored dealers. Nor do I think we will, but if we do, we can always create subclasses as necessary. But you are saying here before us today that some Ford dealers lost sales to other Ford dealers, and yet all of these dealers are in the same class. And how can a Ford dealer who has gained sales from the program come in and complain of the competitive effect of the program? Your Honor, the issue is whether or not there are antagonistic interests between those dealers. We don't have to prove lost sales between those dealers because we have the inference under established case law of competitive injury. The lost sales issue only goes to competitive injury. I know that Ford argued that under one of the cases, I think it was the J. Payne Truitt case, they said, you know what, that case says that to prove antitrust injury, you have to show lost sales. That's not what the case said. The case is uniformly, including most recently, this court's decision in Feesers last summer, said that the plaintiffs are entitled to an inference of competitive injury and do not have to show that antagonism that you're talking about, Your Honor. And I could read, I have it right in front of me, it creates a rebuttable presumption, this court said in Feesers, of competitive injury where you show that substantial price reduction over a course of time. That's been the black letter law since the Morton Salt case. It was cited in the Volvo case, this court's cases. That's why there's no antagonism. It's a red herring with regard to our case, Your Honor. And I do understand why you ask because most Robinson Patent Act cases do involve that type of antagonism. Ours does not. That's why this is a unique case that really deserves class action treatment. Are we deciding this case on the basis of the pleadings at this point? In other words, are we saying that this order stands or falls by looking at the pleadings? I think the answer is yes at this point, Your Honor. What happens, and I couldn't help but wonder, and that's what I thought too, that if during the course of the discovery the situation changes and there's a different picture that the judge sees, can he vacate this award? Not award, vacate the order for a class action and say, look, this has got to proceed individually. Absolutely. I believe the judge has that discretion to control the case, to monitor the case as additional facts may develop. Even if additional cases are rendered by the Supreme Court or other courts, he may have to revisit this issue. I believe he always has the discretion to change his order, whether it be to eliminate certain cause of action, to create subclasses, et cetera. That's why we say let him continue to manage it. I think he properly analyzed each of the elements. He gave that rigorous analysis that's necessary. So this isn't like you sometimes see thrown at you the law of the case. Look, this is already decided. You can't revisit it. We're not concerned. Not at all, Your Honor. Class action can always be revisited by the judge who is monitoring it until such time as there's a final judgment in the case. Okay, Mr. Goodman. Anything else? Thank you very much. Thank you, Mr. Goodman. Mr. Hivey? In no particular order, I want to respond to some of the things that they just said. With respect to this issue of all or nothing, all I can suggest to you is we didn't see any precedent that suggested that you could divide this up. And more importantly, all the cases we did find were not just Robinson-Patman cases. They were Robinson-Patman cases plus contract claims plus Attica cases. In all of those cases that we were finding, they were not certified as a class. And there's a fundamental reason why in these Robinson-Patman cases, and it's because, and I don't believe they get it yet, they have to prove injury to competition and antitrust injury. Injury to competition as opposed to, or in addition to, actual harm to the particular dealer. And I'm not here to argue the merits on it. I wanted to. I will probably someday. But what I'm suggesting to you is those two inquiries require you to look at this and look to see how each dealer was affected by this program. Just take the example, the question. Is a certified dealer competing with a certified dealer? There can be no discrimination there. Is a non-certified dealer competing with a non-certified dealer? They're on equal playing. They can't be competing. There can be no problem there under Robinson-Patman. Are they, is a certified dealer dealing or in competition with a non-certified dealer? Well, maybe you got a question there. But it's those individual inquiries. Again, leaving aside the merits, it's the individual inquiries under Rule 23 that you have to go through and the thousands of different stories you're going to tell that suggest that predominance cannot be satisfied. You know, that was a point that I was wondering about. I asked Mr. Goodman two questions and he answered quite straightforward. He said that he thought that the case was decided at this point on the pleadings. Do you agree with that? Well, that's what the judge did. Yeah, I mean, he didn't let us do any discovery. That's right, okay. So we're only looking at the pleadings. And then he also said that as time goes on, the court might think, wait a second, this doesn't look quite the same as it looked then and I don't think this ought to be a class action. And I'm going to decertify it. Can he do that? I suppose he can. But I would suggest to you that the reason we came here on a 23-F appeal, the reasons that suggest that this court agreed to hear this are in force now. As I said earlier, I don't think it's fair that the case takes on a totally different – Well, the case is going to become – and I thought myself the judge had a lot of guts when he certified it because he was buying plenty of trouble for himself. No question about that. This was going to be a tough case to handle. That was obvious. But it may be he may think, look, I thought I could certify this and I did, but maybe I'm wrong or maybe I was wrong because I can see all these factors. I don't know. Well, he was wrong then and he'd be wrong then not to be – Well, he may think he's wrong later though. And after we spent how much in class discovery, how much going through this and potentially putting in play damages to somebody who benefited by this program. You've got supposed victims and supposed beneficiaries in the same class. You can't have that. The reference to Judge Alito, now Justice Alito, I knew I'd hear that. I've heard it over and over again in this case. He ruled on one issue, constitutional standing. He did not rule on any of the other grounds for dismissal. Least of all, did he rule on antitrust standing, which I suggest to you they don't have, but that's not before the court now. The breach of contract claim. They read their claim. They don't just say they breached it. They say the breaches, the coercion, the breaches, the price discrimination, they sweep in all of these complaints. So what they complain about is the design, the application, the implementation, and the effect of this blue oval program on them. In order to determine what the breach is and how it affected them, you've got to go through these individual inquiries. I'm only here suggesting to you that class certification is inappropriate. He says the case was old. That's why the judge, in my view, went ahead and ruled on this thing without any discovery. We came back to him. He was the third judge we've had at the district court level. We had this case dismissed twice. It came back on constitutional standing grounds, and after six years he looked at us and said, so how far along are you in discovery? We said we haven't done anything. It was like, are you kidding me? Then he rules and he says, let's move this case along, and he rules on class certification, and it was a wrong decision. Lost sales? And he stands here today and says we don't know? You certainly don't see it in the complaint. Okay, Mr. Hyde, you look at your red right there. If I could just sum up and say you've got 4,500 different stories to be told here. This is not the case where if you're going to go out on a ledge and maybe take precedent a little bit further, this isn't the right case for that. We would urge the court to reverse the district court's decision, deny class certification, and to the extent you need to send it back to the judge with instructions to deny it, then I'd ask you to do it, but I think you can do it here. Thank you very much. Thank you. We thank counsel for excellent arguments, and we'll take the matter under advisement.